[Cite as *State v. Latham*, 2025-Ohio-495.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No.  L-24-1124

    Appellant                                      Trial Court No.  CR0202302354

v.

David Latham                                        **DECISION AND JUDGMENT**

    Appellee                                        Decided:  February 14, 2025

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Sheldon S. Wittenberg, for appellant.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} This matter is before the court on the state of Ohio's appeal, pursuant to R.C. 2945.67, challenging the dismissal of the indictment by the Lucas County Court of Common Pleas on April 30, 2024. Finding no error, we affirm.

## II. Facts and Procedural History

{¶ 2} On May 3, 2023, police conducted a traffic stop of appellee, David Latham, and he was later indicted on one count of improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16(B) and (I) and R.C. 2923.111, a felony of the fourth degree. Latham filed a motion to acquit on April 1, 2024, which the trial court construed as a motion to dismiss under Crim.R. 12(C).

{¶ 3} On April 23, 2024, the trial court held a hearing on the motion. The state orally opposed the motion at hearing, having filed no brief in opposition. Prior to argument, the parties stipulated to the underlying facts in the trial court, as follows:

> THE COURT: It's my understanding that the detective that would be necessary for testimony is unavailable … this morning, however, the parties have discussed some stipulations to the facts that would have been elicited through testimony from the officer?
> [PROSECUTOR]: Yes, Your honor. The parties, I believe, are prepared to stipulate that Mr. Latham was stopped on May 3rd, 2023, at Avondale and Brookley in Toledo, Lucas County. David Latham was driving his vehicle – or a vehicle, a firearm and two rounds of 9-millimeter ammunition were on the front passenger seat next to him.
> Further, defendant has two previous convictions, both misdemeanors of the first degree, representing an attempt – a lesser charge of attempt to commit a felony offense of trafficking in cocaine. One of those convictions was on August 5th, 2021, in Toledo Municipal Court, CRA2107288. The other was on September 15th, 2017, in Toledo Municipal Court CRA17-112790101.
> THE COURT: And anything related to whether or not the defendant was intoxicated or under the influence at the time of this stop?
> [PROSECUTOR]: Your Honor, I did not see any indication of that in the records related to this case.
> THE COURT: So the parties are willing to stipulate that there's no evidence that he was under the influence at the time of the stop?
> [DEFENSE COUNSEL]:   That's correct, Judge.
> THE COURT: Very well, [Defense], you're in agreement with the stipulations as read on the record by [the Prosecutor]?
> [DEFENSE COUNSEL]:   It's factually accurate, Your Honor.

2.

THE COURT: Very well. Given the stipulations by the parties, I find that there's no need for further testimony by the officer in this matter.

{¶ 4} In seeking dismissal, Latham cited to *State v. Barber*, 2023-Ohio-2991 (6th Dist.), a case involving a similar constitutional challenge to R.C. 2923.16, but based on distinguishing facts, including the defendant's failure to assert the challenge in the trial court and his admission that he was not a qualifying adult as defined under R.C. 2923.111 because of his marijuana possession at the time of the offense. *Barber* at ¶ 27. The facts in Latham's case, therefore, presented a stronger constitutional challenge. As to the facts in his own case, Latham argued that a prohibition against his right to open carry in Ohio based on a misdemeanor drug conviction violated his Second Amendment rights, relying on the authority of *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 597 U.S. 1 (2022) and *United States v. Daniels*, 77 F.4th 337 (5th Cir.2023).

{¶ 5} The state argued that the prohibition at issue was specifically authorized by *Bruen* and *District of Columbia v. Heller*, 554 U.S. 570 (2008), as the United States Supreme Court permitted restrictions on firearms that aligned with the historical tradition of concealed carry restrictions. The state argued that the improper transport charge was "a form of concealed carry," and that there was historical precedent permitting states to "eliminate one kind of public carry, concealed carry, so long as they left open the option to carry openly." The state further mentioned regulations "regarding the transportation of firearms" as "historical analogue." The state cited to no precedent beyond *Bruen* and *Heller,* however, and provided no examples of "historical analogue" to the restriction it wished to enforce against Latham, improperly transporting firearms based on Latham's

3.

prior, misdemeanor convictions for attempted drug offenses. Furthermore, the state argued Latham's conduct was an impermissible "concealed carry," without elaborating on this argument.

{¶ 6} At the close of the hearing, the trial court entered findings on the record, stating:

> The motion that's pending before the Court, which was captioned as a motion to acquit, is being construed by the Court as a motion to dismiss under Criminal Rule 12C. The Court makes a finding that defendant's actions are those covered under the protections provided by the Second Amendment, that he's included in the people that's contemplated by that amendment.
>
> In reviewing the US Supreme Court, [*Bruen*], the Court announced the test that it would use to determine if a regulation violates the Second Amendment. To pass muster, the State must show that the firearms regulation is part of historical tradition and the limits and the outer bounds of the rights to keep and bear arms.
>
> The Court finds that United States versus Daniels that was cited by defense counsel's motion out of the Fifth Circuit, 77 F.4th 337, is instructive in this case. In that matter, the Fifth Circuit found that the founders were familiar with intoxication via alcohol, but not familiar with intoxication through marijuana or other controlled substances, and the Court must look to similar harm from alcohol that the founding generation confronted through these regulations.
>
> The Daniels Court analyzed that regarding alcohol and gun possession that regulations fell into two tracts, one was the misuse of weapons while intoxicated, and then the discipline of State militias, and the regulations against misuse of weapons while intoxicated only applied to people while they were intoxicated, and the discipline and regulation of militias only dealt with those people that were in currently in active service.
>
> The Court there did not find that there was a historical tradition to ban a person from having a weapon unless they were currently intoxicated. The Daniels Court found that the same was true during the reconstruction period and that the regulations there only banned those that were currently intoxicated from possessing weapons.
>
> The Daniels Court finally concluded that 18 U.S.C. 922[(g)(3)] doesn't fall under the historical analogues that permits legislators to prohibit people that they deem dangerous from possessing weapons because the laws didn't protect people from marijuana users or those who would occasionally use other substances.
>
> Because the State hasn't demonstrated that defendant was currently intoxicated at the time of his arrest, I find that the motion to dismiss is well taken under the findings of Daniels, and that 2923.16 and 2923.111 are found

4.

unconstitutional only as applied to the defendant in this case, and so I'll grant the motion to dismiss and release defendant from any further bond or obligation on the case.

{¶ 7} After ordering dismissal on the record at hearing, the trial court filed a written entry on April 30, 2024.

{¶ 8} The state filed a timely appeal of the judgment.

### III. Assignments of Error

{¶ 9} The state asserts the following assignments of error on appeal:

**Assignment of Error I:** When the United States Supreme Court vacates judgment relied upon by the trial court in dismissing a case, the dismissal should likewise be vacated and remanded for further consideration.

**Assignment of Error II:** Restrictions on the concealed carry of firearms are consistent with the historic tradition of firearms regulations. *New York State Rifle & Pistol Assn v. Bruen*, [597 U.S. 1] (2022); *District of Columbia v. Heller*, 554 U.S. 5570, 592 (2008); and *United States v. Rahimi*, [602 U.S. 680] (2024), applied.

**Assignment of Error III:** Restrictions on the manner of transportation of firearms are consistent with the historic tradition of firearm safety regulations.

### IV. Analysis

{¶ 10} The state presents both procedural and substantive arguments in the assignments of error. The state's first assignment of error addresses a procedural issue, and not Latham's challenge to the constitutionality of R.C. 2923.16 and 2923.111 as applied to his case. The state's second and third assignments of error challenge the trial

court's substantive ruling, regarding the constitutionality of the charge against Latham. We address each type of challenge in turn.

> **A. The trial court relied on the standard set forth in *Bruen*, and therefore subsequent proceedings in *Daniels* do not require remand for reconsideration of Latham's constitutional challenge under *Bruen*.**

{¶ 11} In the first assignment of error, the state argues that because the trial court's decision relied on the authority of *United States v. Daniels*, 77 F.4th 338 (5th Cir.2023), the remand of *Daniels* by the United States Supreme Court requires remand of Latham's case back to the trial court for consideration of the decision in *Rahimi*. However, the state fails to explain how *Rahimi* affects the trial court's decision, aside from noting the remand of *Daniels*. Significantly, the state fails to show that *Rahimi* would change the trial court's application of the test set forth in *Bruen*.

{¶ 12} In *Daniels,* the Fifth Circuit Court of Appeals relied on its own precedent in *United States v. Rahimi,* 61 F.4th 443 (5th Cir.2023). In *Rahimi,* the Fifth Circuit addressed a facial challenge to the constitutionality of 18 U.S.C. 922(g)(8) and determined that the government failed to demonstrate that the law restricting a citizen's right to bear arms "fits within our Nation's historical tradition of firearm regulation." *Rahimi,* 61 F.4th at 460. The Fifth Circuit determined 922(g)(8) was unconstitutional, applying the test in *Bruen.* Applying similar reasoning in *Daniels,* the Fifth Circuit again determined that 922(g)(8) was unconstitutional. *Daniels,* 77 F.4th at 355. In *Rahimi,* the restriction against possessing a firearm was applied to an individual who had violated a civil protection order, *Rahimi* at 449, and in *Daniels,* the restriction was applied to an admitted marijuana user, *Daniels* at 340.

6.

{¶ 13} The United States Supreme Court granted certiorari in *Daniels,* having already accepted *Rahimi.* After the United States Supreme Court reversed the Fifth Circuit in *Rahimi, see United States v. Rahimi*, 602 U.S. 680 (2024), *Daniels* was remanded to the Fifth Circuit to address that case based on the Supreme Court's decision in *Rahimi,* which included its clarification of the test articulated in *Bruen.*

{¶ 14} The state argues this court must also vacate the dismissal and remand the present case, following the example of the United States Supreme Court. In support, the state argues that the trial court relied on a decision that is no longer valid law. We disagree with this characterization of the trial court's reference to *Daniels*.

{¶ 15} In considering Latham's motion and finding R.C. 2923.16 and 2923.111 "unconstitutional only as applied to the defendant in this case," the trial court applied the standard set forth in *Bruen*. The trial court's reference to *Daniels*, moreover, was limited to an example of "historical analogue" regarding laws that prohibited weapons possession while intoxicated. The trial court noted that prohibitions addressing intoxication from substances unknown to the founders, i.e. marijuana, were closely related to laws addressing intoxication from alcohol, a substance recognized through history. Latham argued that both *Daniels* and our own precedent in *State v. Barber*, 2023-Ohio-2991 (6th Dist.) demonstrated a prohibition on possession of firearms by those under the influence of drugs, facts not demonstrated in his case. The state, furthermore, presented no example of precedent that identified historical prohibitions against firearm possession based on a misdemeanor, attempted drug offense in the past, unrelated to contemporaneous facts.

7.

{¶ 16} Considering this record, the trial court's reference to *Daniels* was limited to consideration of historical regulations addressed in *Daniels,* with the trial court finding no similarity between the *Daniels* regulation and the statutes at issue in Latham's case. The trial court applied the *Bruen* test in dismissing the charge, and the decision in *Rahimi* did not overturn application of the *Bruen* test. Instead, the *Rahimi* decision applied *Bruen,* reiterating that "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Rahimi* at 692, citing *Bruen* at 26-41. Accordingly, we find the state's first assignment of error, seeking remand on a procedural issue, not well-taken.

> **B. The trial court properly dismissed the charge against Latham, as Latham demonstrated he was "the people" protected by the Second Amendment and there is no historical analogue to support a limitation to his rights based on prior misdemeanor drug offenses.**

{¶ 17} In the second and third assignments of error, the state challenges the trial court's determination that the statute was unconstitutional as applied to Latham, arguing the charge against Latham was consistent with the historic tradition of firearms regulations relative to concealed carry of firearms and the manner of transportation of firearms, as addressed by *Bruen, Heller,* and *Rahimi.* The state's argument on appeal is based on the validity of gun regulations concerning concealed carry, and not the application of these regulations based on Latham's specific circumstances, to wit, his prior, misdemeanor attempted drug offenses.

{¶ 18} The trial court dismissed the charge against Latham pursuant to Crim.R. 12(C).

8.

{¶ 19} "Crim.R. 12 empowers trial courts to rule on 'any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue.'" *State v. Palmer,* 2012-Ohio-580, ¶ 22, quoting Crim.R. 12(C). In considering dismissal, courts may consider "evidence beyond the face of the indictment." *Palmer* at ¶ 22, quoting *State v. Brady,* 2008-Ohio-4493, ¶ 18. Dismissal is proper if there is "no set of circumstances" in which the defendant can violate the law's requirements, or if an "indictment depends on the unconstitutional application of law." *Palmer* at ¶ 23.

{¶ 20} We apply de novo review to the trial court's decision and independently consider whether the trial court correctly found the indictment is unconstitutional as applied to Latham, meriting dismissal pursuant to Crim.R. 12(C). *State v. Parker,* 2023-Ohio-2127, ¶ 20 (5th Dist.); *see also State v. Owens,* 2017-Ohio-2909, ¶ 11 (6th Dist.).

{¶ 21} Latham challenged the constitutionality of the charge based on the facts of his case, and therefore, Latham was required to demonstrate that "application of the statute *in the particular context in which he has acted* … would be unconstitutional." (Emphasis sic.) *State v. White,* 2013-Ohio-51, ¶ 151 (6th Dist.), quoting *Yajnik v. Akron Dept. of Health, Hous. Div.,* 2004-Ohio-357, ¶ 14 (additional citations omitted.). In other words, Latham pursued an "as applied" challenge and not a facial challenge to the constitutionality of the charge at issue. Applying the test in *Bruen,* the trial court found the charge unconstitutional only as it applied to Latham's case.

{¶ 22} Latham was charged with improperly handling a firearm in a motor vehicle, in violation of R.C. 2923.16(B) and R.C. 2923.111. R.C. 2923.16(B) provides: "No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a

9.

manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." However, this statute does not apply to a person who "has been issued a concealed handgun license that is valid at the time in question[.]" *See* R.C. 2923.16(F)(5)(a).

{¶ 23} R.C. 2923.111, effective June 13, 2022, governs carrying a concealed handgun without a license and grants a qualifying adult the right to carry a concealed handgun subject to the same restrictions that would apply to a person previously issued a license to carry a concealed handgun. *Barber,* 2023-Ohio-2991, ¶ 20 (6th Dist.). A "qualifying adult" means a person "who is all of the following: (a) Twenty-one years of age or older; (b) Not legally prohibited from possessing or receiving a firearm under 18 U.S.C. 922(g)(1) to (9) or under section 2923.13 of the Revised Code or any other Revised Code provision; [and] (c) Satisfies all of the criteria listed in divisions (D)(1)(a) to (j), (m), (p), (q), and (s) of section 2923.125 of the Revised Code." R.C. 2923.111(A)(2).

{¶ 24} The state appears to concede that Latham is a person protected by the Second Amendment, focusing instead on whether Latham satisfied the requirements of a "qualifying adult" as defined at R.C. 2923.111. Thus, the state's argument presumes the definition at R.C. 2923.111 is a valid regulation on Second Amendment rights without applying the test set forth in *Bruen.* This is contrary to the mandate of *Bruen.*

{¶ 25} Pursuant to *Bruen,* "the Constitution presumptively protects" an individual's conduct, where the Second Amendment plainly applies. *Bruen,* 597 U.S. at 17. In failing to challenge that Latham is "the people" identified within the Second

10.

Amendment, the state concedes this presumptive protection and must justify its regulation of Latham's Second Amendment rights by demonstrating "that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen* at 17. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" (Citation omitted) *Id.*

{¶ 26} In this case, the state argues its regulatory scheme is valid, and that Latham is subject to prosecution under R.C. 2923.16(B) because of his misdemeanor convictions for attempted drug offenses which remove him from the definition of a "qualifying adult" under this scheme. The disqualifying factor for Latham, according to the state, is that Latham would have been ineligible to obtain a license under prior law because he was convicted of an offense under "Chapter 2925. … that involves the illegal possession, use, sale, administration, or distribution of or trafficking in a drug of abuse." *See* R.C. 2923.125(D)(1)(e).

{¶ 27} Revised Code Chapter 2925 codifies numerous drug offenses, ranging from nonviolent regulatory infractions to aggravated trafficking. Pursuant to Chapter 2925, disqualifying offenses include first degree felony offenses for trafficking in violation of R.C. 2925.03(B) and (C), minor misdemeanor offenses for marijuana possession in violation of R.C. 2925.11(C)(3)(a), and fourth or fifth degree felony offenses for selling or using drugs not FDA approved in violation of R.C. 2925.09(A) or (B). Based on the state's argument, any of these offenses would disqualify an adult and criminalize otherwise legal gun possession under R.C. 2923.111. Based on this specific requirement,

11.

having no offenses under Chapter 2925, the state contends Latham's right to have his firearm in a motor vehicle may be limited under R.C. 2923.111. Therefore, lacking status as a "qualifying adult" under R.C. 2923.111, the state argues Latham's transport of the firearm violated R.C. 2923.16(B).

{¶ 28} As to historical precedent, the state cites to precedent that generally recognizes the validity of restrictions on concealed carry of firearms, as referenced in *Heller, Bruen,* and *Rahimi*. The state further argues that *Rahimi* expressly rejected the argument that the Second Amendment prohibits laws banning possession of guns "by categories of persons thought by a legislature to present a special danger of misuse." *Rahimi,* 602 U.S. at 698. The state, however, fails to recognize that these arguments address separate issues.

{¶ 29} Latham does not challenge laws that generally ban gun possession by dangerous individuals. In fact, the state does not dispute that Latham could legally possess a firearm and does not fall within the category of a "felon in possession," a category of persons often prohibited from possessing weapons. The issue of whether concealed carry restrictions are generally valid is also not at issue in this case. Instead, regardless of whether *Bruen* and *Rahimi* permit regulations that govern who may carry a concealed weapon*,* the limitation in this case concerns the regulation of Latham's Second Amendment rights based on the application of R.C. 2923.125 and based on his prior convictions for misdemeanor drug offenses.

{¶ 30} The record demonstrates Latham could legally possess a firearm, and the state limits its challenge to Latham's legal status as an individual barred from having a

handgun only in a vehicle, under Ohio's current laws. As in the trial court, however, the state cites to no precedent that demonstrates an historical tradition of prohibiting someone with convictions for misdemeanor, attempted drug offenses from having a weapon in a motor vehicle, the exact charge Latham faced. The most relevant case cited by the state, furthermore, was factually distinguishable from Latham's case and was resolved on the validity of the licensing requirements governing the transport of firearms in National Parks, with no discussion of the historical tradition of limiting Second Amendment rights based on misdemeanor drug offenses. *See, e.g., United States v. Tolmosoff,* E. D. of Calif. No. 6:23-po-00187-HBK-1, 2024 WL 1575071 (Apr. 11, 2024) (The Eastern District Court of California found the challenged law was not a blanket ban of transportation of weapons and only required a license to do so, which Tolmosoff lacked, and determined the law was consistent "with the Nation's historic tradition of firearm regulation" for concealed weapons and for "carriage" to satisfy *Bruen.*).

{¶ 31} In the present case, the state references no statute that requires a special license to transport a firearm. Also, in this instance, the application of R.C. 2923.111 and R.C. 2923.125(D)(1)(e) represents an absolute disqualification of Latham only while he is traveling in a motor vehicle, based on prior misdemeanor drug convictions alone. The state provides no example of historical precedent that would support such an absolute, yet limited disqualification, considering Latham lawfully possessed the firearm outside of his vehicle.

{¶ 32} Latham's lawful possession of a firearm, moreover, negates argument that he belongs to a category of people who present "a special danger of misuse."

13.

Furthermore, while the state proffered no historical precedent to support the constitutionality of the firearms restriction imposed on Latham, based on his prior misdemeanor drug offenses, other jurisdictions have concluded that historical restrictions do not exist based only on drug use or a criminal record, without additional considerations.

{¶ 33} First, there is historical precedent for disarming those under the influence of drugs or alcohol, based on comparisons of a person's capacity as affected by mental illness and as affected by intoxication. However, in *United States v. Connelly,* 117 F.4th 269 (5th Cir.2024), the Fifth Circuit Court of Appeals distinguished restrictions on the mentally ill from restrictions aimed at disarming a drug user who was not under the influence at the time of possessing a firearm, finding, "[r]epeat marijuana users, like repeat alcohol users, are of sound mind upon regaining sobriety, whereas those adjudged severely mentally ill often require extensive treatment and follow-up examination before they can be said to be of sound mind again." *Connelly* at 276-277. In comparing the historical regulations for disarming the mentally ill, the Fifth District determined that severely, mentally ill persons posed a threat of danger to themselves and others, while a drug user, while sober, was no different than a drinker between periods of intoxication, "whom the Founders would *not* disarm." (Emphasis sic.) *Id.* at 277. Additionally, the Court noted a lack of precedent demonstrating a "non-violent marijuana user" fell into the "dangerous" category for purposes of banning firearm possession or ownership. *Id.* at 277-278.

14.

**{¶ 34}** Going further, the Sixth Circuit Court of Appeals rejected the presumption upholding all "felon-in-possession" laws and instead determined that "[t]he law-abiding-citizen-only theory… fails as a matter of history and tradition." *United States v. Williams,* 113 F.4th 637, 647 (6th Cir.2024).[1] The Sixth Circuit noted "it was common knowledge at the founding that the Bill of Rights merely served to codify rights that existed long before the ink dried on constitutional parchment." *Williams* at 649. Thus, "the people" refers to "all members of the political community, not an unspecified subset." *Williams* at 649, quoting *Heller*, 554 U.S. at 580. Without a distinction between felons and non-felons in the Second Amendment's identification of "the people," a felon, "as an American citizen, is a member of this political community." *Williams* at 649.

**{¶ 35}** While noting the lack of distinction regarding felons and non-felons, the Sixth Circuit addressed the history of law and practice that supported disarming those who posed a danger of violence. *Id.* at 640-655. Finding a long history of disarming the dangerous, the Sixth Circuit nonetheless considered that, historically, the disarming official was empowered to determine whether the individual posed a danger prior to imposing restrictions. *Williams* at 657-658. While acknowledging that dangerousness can be demonstrated by past criminal acts, the Sixth Circuit concluded that "courts – much like the officials of old – must focus on each individual's specific characteristics" by addressing an individual's "entire criminal record[.]" *Id.* at 657. As support, the Sixth Circuit noted that "the founders' instinct that some crimes are more dangerous than others

---

[1] The Sixth Circuit decided *Williams* after the state filed its appellate brief, but prior to the state's filing of a reply brief.

15.

maps well onto the Nation's early 20th-century framework. (Citation omitted) *Williams* at 658. Applying this reasoning to the case in *Williams,* the Sixth Circuit rejected the as-applied challenge to the felon-in-possession charge, noting the defendant's prior felony convictions for crimes against the person, including robbing two people at gunpoint and attempted murder, were sufficient to support the prohibition based on a danger of violence. *Id.* at 662.

{¶ 36} At issue in this case, Latham's criminal record is limited to two misdemeanor convictions for attempted drug offenses. Drug offenses are not "strictly crimes against the person," but involve conduct that, "in itself, poses a danger to the community." *Williams* at 659. However, applying the analysis of *Williams,* there must be a demonstration that a person protected by the Second Amendment poses a danger to the public to permit disarming or restricting the right to bear arms, even for a felon. Instead, the state's argument focuses on the applicability of its "qualifying adult" regulation without any precedent to demonstrate that enforcing this regulation against Latham, based on his prior convictions, is a regulation that has historical analogue, necessary to restrict Latham's Second Amendment rights.

{¶ 37} Latham demonstrated that he is part of "the people" for purposes of the Second Amendment and argued facts that challenged the restriction the state sought to impose, including his otherwise legal possession of a firearm under Ohio law. The state failed to proffer any historical analogue that demonstrated a history and tradition of limiting the Second Amendment rights for a person in Latham's circumstances. We therefore find the trial court did not err in finding R.C. 2923.16(B) and 2923.111

16.

unconstitutional as applied to the facts in Latham's case. Accordingly, we find the state's second and third assignments of error not well-taken.

## V. Conclusion

Finding substantial justice has been done, we affirm the judgment of the Lucas County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.       _____
                                JUDGE
Gene A. Zmuda, J. 

                            _____
Myron C. Duhart, J.                      JUDGE
CONCUR.

                            _____
                                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.