**[Cite as *State v. McKenzie*, 2025-Ohio-5487.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

    Appellee

v.

Antwon McKenzie

    Appellant

Court of Appeals No.  {48}L-25-00052

Trial Court No.  CR0202401391

**DECISION AND JUDGMENT**

Decided:  December 9, 2025

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Randy L. Meyer, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} This is an appeal from a conviction for having weapons while under a disability, challenging the constitutionality of R.C. 2923.13 as applied to the facts of his case and challenging the imposition of costs of supervision. Based on the following, we vacate the conviction and remand for further proceedings.

## II.  Background and Procedural History

{¶ 2} On January 12, 2024, police encountered McKenzie sitting on the steps of a residence where police responded to reports of a burglary. They arrested McKenzie after finding him in possession of a firearm. McKenzie was indicted for having weapons while under disability in violation of R.C. 2923.13(A)(3) and (B), a felony of the third degree. In 2000, McKenzie was convicted of a felony offense for attempted possession of crack cocaine.

{¶ 3} McKenzie filed a motion to dismiss the indictment, arguing application of the statute in his circumstances violated his Second Amendment rights as protected under the United States Constitution, as addressed in *District of Columbia v. Heller,* 554 U.S. 579 (2008) and *New York Rifle & Pistol Assoc. v. Bruen,* 597 U.S. 1 (2022) and its progeny. McKenzie, noting the test introduced in *Bruen,* argued a lack of historical analogue to support restricting his Second Amendment rights, considering the state of Ohio only began including drug offenses as a category that created the disability under R.C. 2923.13 in 1972.

{¶ 4} The State filed an opposition to the motion to dismiss. In support, the State relied on *Heller,* and the Supreme Court's reference to the right to bear arms as belonging to "law-abiding, responsible citizens." *Heller* at 635. Additionally, the State noted the statement in *Heller,* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 626. While recognizing *Bruen* changed the test for constitutionality regarding restrictions on the right

2

to bear arms, the State argued that the *Bruen* court reinforced the holding of *Heller* regarding the regulation of firearms for convicted felons, citing a concurring opinion. *See Bruen,* 597 U.S. at 81 (Kavanaugh, J., joined by Roberts, C.J., concurring). As to the *Bruen* test, the State argued that McKenzie falls outside "the people" referenced in the Second Amendment because he is a convicted felon. The State further argued that there is a long legislative tradition of excluding felons from "the people," including under federal law.

{¶ 5} The trial court held no hearing, and the parties entered no stipulation as to the facts of McKenzie's case, other than noting his 2000 felony conviction for attempted possession of crack cocaine. The matter was submitted to the trial court through written briefs that focused exclusively on the law and the admission of McKenzie's prior conviction. There were no facts entered into the record through testimony or stipulation, detailing the circumstances underlying the prior conviction.

{¶ 6} On November 26, 2024, the trial court entered its opinion and judgment entry, denying the motion to dismiss indictment. In its opinion, the trial court addressed the law and differentiated between binding precedent and persuasive precedent, and relying on the binding authority of *Heller,* found the law as applied to McKenzie did not violate his Second Amendment rights. The trial court, furthermore, noted the provision under Ohio law that permitted relief from the disability to possess firearms under R.C. 2923.13, considering McKenzie's failure to seek relief a separate basis to determine the constitutionality of R.C. 2923.13. The trial court did not apply the *Bruen* test, with the

3

decision limited to the controlling authority of *Heller,* as reiterated in Justice Kavanaugh's concurring opinion in *Bruen.*

{¶ 7} Following dismissal, McKenzie entered a no contest plea to the indictment, and the trial court proceeded to sentencing without a presentence investigation, relying on the record check already in the record. The trial court found McKenzie guilty, imposed a one-year term of community control, and ordered McKenzie to pay the costs of supervision and restitution, with the imposition of costs stayed pending his appeal.

{¶ 8} This appeal followed.

### III.  Assignments of Error

{¶ 9} McKenzie raises the following assignments of error in his appeal:

1. The trial court committed plain error, or in the alternative, abused its discretion, when it denied Appellant's Motion to Dismiss.

2. The trial court abused its discretion when it assigned Appellant to pay the costs of supervision, without considering Appellant's future or current ability to pay them.

### IV.  Analysis

{¶ 10} In his first assignment of error, McKenzie argues the trial court committed plain error or abused its discretion in denying his motion to dismiss the indictment. In support, McKenzie argues that the trial court based its ruling on *Heller,* and failed to apply more recent precedent, including the Sixth Circuit Court of Appeals decision in *United States v. Williams,* 113 F.4th 637 (2024). McKenzie argued that, under the two-step test of *Bruen,* the trial court was required to determine whether the Second

Amendment protected McKenzie's right to bear arms as one of "the people," and if McKenzie's conduct was covered by the Second Amendment, whether the State demonstrated application of R.C. 2923.13 to McKenzie is consistent with the historical tradition of firearm regulation, or that McKenzie is a violent offender posing a danger to others if armed. McKenzie argues that his record demonstrates he is not a violent offender, and therefore the trial court erred in denying his motion to dismiss the indictment.

{¶ 11} The trial court addressed McKenzie's motion to dismiss the indictment under Crim.R. 12(C), which "empowers trial courts to rule on 'any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue.'" *State v. Latham,* 2025-Ohio-495, ¶ 19 (6th Dist.), quoting *State v. Palmer,* 2012-Ohio-580, ¶ 22, quoting Crim R. 12(C). We review the trial court's judgment de novo. *Latham* at ¶ 20, citing *State v. Parker,* 2023-Ohio-2127, ¶ 20 (5th Dist.); *State v. Owens,* 2017-Ohio-2909, ¶ 11 (6th Dist.).

{¶ 12} In *Bruen,* the United States Supreme Court established a two-step test, to be applied in considering a constitutional challenge to a firearm regulation and determining whether the challenged law is consistent with the rights protected under the Second Amendment. *Bruen,* 597 U.S. at 22. Pursuant to *Bruen,* courts must first determine whether the "Second Amendment's plain text covers an individual's conduct." *Bruen* at 24. If yes, then the "Constitution presumptively protects that conduct." *Id.*

{¶ 13} The second step requires the State to demonstrate the challenged law is justified by affirmatively "demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* The State satisfies its burden by presenting an historical record of permissible firearms law "relevantly similar" to the challenged law, applying "reasoning by analogy[.]" *Bruen* at 28-29. "Much like we use history to determine which 'modern arms' are protected by the Second Amendment, so too does history guide our consideration of modern regulations that were unimaginable at the founding." *Id.* at 28. Under this second step, it is the State's burden to present historical analogue, justifying the challenged law, with no requirement for the court to search out supporting evidence on the State's behalf. *State v. Barber,* 2025-Ohio-1193, ¶ 18 (1st Dist.), citing *Bruen* at 25, fn. 6.

{¶ 14} As an initial matter, we note the State argued in the trial court that McKenzie is not included in the category of "the people" as referenced on the Second Amendment, based on his felony conviction. The trial court did not make that determination in its judgment, and the State does not pursue that position on appeal. While not presented as an issue on appeal, we recognize that "the people" "unambiguously refers to all members of the political community, not an unspecified subset." *Williams,* 113 F.4th at 649, quoting *Heller,* 554 U.S. at 580. Thus, as an American citizen, McKenzie is a member of the political community, "the people," as referenced in the Second, as well as the First and Fourth Amendments to the United States Constitution. (Citations omitted) *Williams* at 649.

6

{¶ 15} On appeal, the State argues the trial court properly determined that R.C. 2923.13 is constitutional, as applied to McKenzie, considering the history of regulation concerning felons and the holdings in *Heller,* recently reiterated in *United States v. Rahimi,* 602 U.S. 680 (2024). The State specifically reads *Rahmi* as holding that the firearms prohibition under R.C. 2923.13 is constitutional as applied to McKenzie, considering the statement in *Heller* that "many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *Rahimi* at 699, citing *Heller* at 626, 627. However, the more accurate holding in *Rahimi,* pertinent to the issue decided, was:

> Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others.
> …
> In *Heller*, [*McDonald v. City of Chicago,* 561 U.S. 742 (2010)]*,* and *Bruen*, this Court did not "undertake an exhaustive historical analysis ... of the full scope of the Second Amendment." *Bruen*, 597 U.S., at 31, 142 S.Ct. 2111. Nor do we do so today. Rather, we conclude only this: An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment.

*Rahimi* at 700, 702.

{¶ 16} In entering judgment, the trial court conducted no apparent analysis under *Bruen,* limiting the decision to the presumptive lawfulness of R.C. 2923.13 without further examination of whether McKenzie posed a danger to society based on his felony conviction and without reference to the historical analogue required under *Bruen*. While *Heller, Bruen,* and *Rahimi* expressly *did not* determine the constitutionality of felon-in-possession laws, remarking that such restrictions are "presumptively lawful," the United

States Supreme Court also did not carve out an exception to the *Bruen* test for these restrictions.

{¶ 17} In *Williams,* the Sixth Circuit specifically addressed the federal felon-in-possession law, U.S. Code 922(g)(1), applying the *Bruen* test, and determined *Bruen* required applying the test despite the "law-abiding, responsible" language recited in *Heller* and *Bruen. Williams* at 646. To determine otherwise, the Court found, was to read too much into the "repeated invocation of 'law-abiding, responsible citizens'" and would be "inconsistent with both *Heller* and the individualized nature of the right to keep and bear arms." *Id.* In rejecting a presumption of constitutionality and reliance on pre-*Bruen* precedent, without applying the *Bruen* test, the Court noted the "decisions in *Bruen* and *Rahimi* supersede" past decisions analyzing 922(g) under *Heller*.

{¶ 18} In addressing the federal, felon-in-possession law, the Sixth Circuit reiterated the finding in *Heller,* that the right under the Second Amendment "'belongs to all Americans.'" *Williams* at 646, quoting *Heller* at 580-581.  In applying the second step of the *Bruen* test, the Sixth Circuit found that applying the "law-abiding-citizens-only" theory "fails as a matter of history and tradition," because "the founding generation applied this virtuous-citizen approach to civic rights only." *Williams* at 647.

{¶ 19} The Sixth Circuit recognized that *Heller* rejected the civic-rights model, finding "the right to bear arms doesn't stem from the collective need for a militia[,]" but is – instead – "an *individual* right unconnected to any other activity." (Emphasis sic.)

8

*Williams* citing *Heller* at 595. The Court further defined the distinction between civic rights, such as the right to vote, and fundamental rights, as follows:

> This civic and political distinction is both critical and self-evident. Consider a few obvious examples. A felon might lose the right to vote. But that does not mean the government can strip them of their right to speak freely, practice the religion of their choice, or to a jury trial.

*Williams* at 647.

{¶ 20} The Sixth Circuit found "our pre-*Bruen* precedent isn't binding here because intervening Supreme Court precedent demands a different mode of analysis." *Williams* at 647-648. The Court acknowledged that *Heller* "said felon-in-possession statutes were 'presumptively lawful'" and *Bruen* did not overrule *Heller. Id.* at 648. However, *Heller* did not address felon-in possession laws in terms of the issue on appeal, and *Bruen* "set forth a new analytical framework for courts to address Second Amendment challenges" in a manner "consistent with the principles that underpin our regulatory tradition." *Williams* at 648, quoting *Rahimi* at 692.

{¶ 21} The theme throughout the Supreme Court's decisions, from *Heller* to *Rahimi* has been consistent. Namely: "Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Rahimi* at 700. The test set forth in *Bruen,* moreover, requires the state to justify that its regulation "is consistent with this Nation's historical tradition of firearm regulation." *Bruen* at 17. In applying *Bruen,* courts no longer extend deference to legislative definitions that decide which felony sentences will result in loss of the right to

9

bear arms. "[W]hen that decision implicates a fundamental, individual right, judicial deference is simply not an option." *Williams* at 661, citing *Bruen* at 26.

{¶ 22} In this case, the trial court did not apply the *Bruen* test but relied instead on *Heller* and its statement of "law-abiding" and responsible citizens. After the trial court's decision, we addressed the *Bruen* test and determined that a trial court must apply the *Bruen* test in addressing challenges to Ohio statutes. In *State v. Latham,* 2025-Ohio-495 (6th Dist.), we noted and applied recent precedent that rejected a presumption that all "felon-in-possession" laws are constitutional in favor of disarming only the individuals that pose a danger. *Latham,* at ¶ 34-35, citing *Williams* at 640-655. Therefore, while this precedent was not available at the time the trial court entered its ruling, the trial court nevertheless erred in applying the incorrect standard to McKenzie's as-applied challenge to R.C. 2923.13.

{¶ 23} The trial court, furthermore, entered its judgment without a proper record, as there was no evidence or stipulation as to the facts underlying McKenzie's prior conviction or whether McKenzie had ever applied for relief from disability under R.C. 2923.14(A)(1). As a consequence, this court has no record from which to resolve McKenzie's as-applied challenge, applying the *Bruen* test for the first time on appeal. Thus, remand is necessary for hearing or stipulation to the facts by the parties. *See, e.g., State v. Elam,* 2025-Ohio-1092, ¶ 15 (6th Dist.) (reversing and remanding for factual findings on the record to permit review).

{¶ 24} Finally, to the extent that the trial court noted the provision under R.C. 2923.14(A)(1), providing for relief from disability, the trial court also noted there was "no indication [McKenzie] has ever applied for such relief." While McKenzie's eligibility for relief under R.C. 2923.14(A)(1), and the possibility of restoring his right to possess firearms under Ohio statute might be a factor in addressing McKenzie's danger to "public safety," *see Williams* at 661-662, this factor it is not equivalent to "historical analogue" to be considered under *Bruen*. Simply put, Ohio's relief from disability statute is not historical analogue to justify Ohio's disability statute, applying the *Bruen* framework, but is – instead – an administrative process that applies only to rights under state law, with no effect on federal prohibitions that implicate Second Amendment rights. *Rivera v. Petition for Relief from Disability,* 2025-Ohio-2225, ¶ 19 (8th Dist.); s*ee also Williams* at 661 (noting as-applied challenges provide "felons the chance required by the Second Amendment to make an individualized showing of qualification to keep and bear arms" as an alternative to an administrative scheme).

{¶ 25} Based on the foregoing, we find McKenzie's first assignment of error well-taken, and reverse and remand the matter for hearing or stipulations of fact so that the trial court might apply the test articulated in *Bruen*.

{¶ 26} Because of our resolution of McKenzie's first assignment of error, we deem his second assignment of error relative to his sentence moot.

## V.  Conclusion

**{¶ 27}** Finding substantial justice has not been done, we reverse and vacate the judgment entered by the Lucas County Court of Common Pleas, and remand for further proceedings consistent with this decision. Appellee, the state of Ohio, is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed,<br>vacated, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

Gene A. Zmuda, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.